IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ANIBAL BONILLA RAMOS, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 3:22-cv-51 |
| : | |
| EQUIFAX INFORMATION SERVICES, LLC, : | |
| EXPERIAN INFORMATION SOLUTIONS, INC. : | |
| TRANS UNION, LLC, JP MORGAN : | |
| CHASE BANK, N.A., and WELLS FARGO : | |
| BANK, N.A. : | |
| : | |
| : | |
| Defendants. : | |
| : | |

## COMPLAINT

Plaintiff Anibal Bonilla Ramos, by counsel, files this Complaint against Defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union"), JP Morgan Chase Bank, N.A. ("Chase"), and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, "Defendants"). Plaintiff alleges as follows:

## INTRODUCTION

1. This is an action for statutory, actual, and punitive damages; costs; and attorneys' fees brought pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

2. Congress enacted TILA to promote the "informed use of credit" by consumers. 15 U.S.C. § 1601(a). Congress sought, in part, to "protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). The TILA thus imposes civil liability on "any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person." 15 U.S.C. § 1640(a). Under § 1643(a), a cardholder may be held liable

for an unauthorized use of the credit card up to $50 only and only if certain conditions are met. The statute defines "unauthorized use" as "a use of a credit card by a person other than the cardholder who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit." 15 U.S.C. § 1602(p).

3.  The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information." 15 U.S.C. § 1681 (emphasis added). In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies must follow when consumers dispute the accuracy of the information reported in their credit reports. 15 U.S.C. §1681i. Consumer reporting agencies also must have reasonable procedures to ensure maximum possible accuracy of the information they report about consumers. 15 U.S.C. §1681e(b).

4.  This case concerns Chase's insistence in holding Plaintiff liable for the full amount of an unauthorized charge, and the credit bureaus' subsequent erroneous reporting of Plaintiff's Chase and Wells Fargo credit card accounts. Even after Plaintiff disputed the inaccurate and highly derogatory information associated with his Chase and Wells Fargo credit card accounts, the credit bureaus continued to report the inaccurate information, causing Plaintiff to suffer damages.

5.  Accordingly, Plaintiff alleges claims against Chase: (1) for holding him liable for an unauthorized credit card charge in an amount over $50 in violation of TILA, 15 U.S.C. § 1643(a)(1)(B); and (2) for failing to fully and properly investigate his disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

6. Plaintiff also alleges a claim against Wells Fargo for failing to fully and properly investigate his disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

7. Finally, Plaintiff alleges claims against Equifax, Experian, and Trans Union for failing to reasonably ensure the maximum possible accuracy of Plaintiff's credit reports in violation of the FCRA, 15 U.S.C. §1681e(b), and for their failure to fulfill their reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

## JURISDICTION

8. The Court has jurisdiction under TILA and the FCRA, 15 U.S.C. §§ 1640, 1681p, and 28 U.S.C. § 1331.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the acts and transactions that form the basis of this Complaint occurred here.

## PARTIES

10. Plaintiff is a natural person, a "cardholder" as defined by 15 U.S.C. § 1602(n) of TILA, and a "consumer" as defined by § 1681a(c) of the FCRA.

11. Equifax is a foreign limited liability company authorized to do business in Virginia. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

12. Experian is a company authorized to do business in Virginia. Experian is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). Experian is regularly engaged in

the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

13. Trans Union is a foreign limited liability company authorized to do business in Virginia. Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

14. Chase is a national association doing business in Virginia. Relevant here, Chase is a card issuer as governed by TILA and a furnisher as governed by the FCRA.

15. Wells Fargo is a national association doing business in Virginia. Relevant here, Wells Fargo is a furnisher as governed by the FCRA.

## FACTS

16. On February 10, 2021, a fraudster obtained access to Plaintiff's Chase credit card ending in -1419 and charged $624.83 at a Wal-Mart location in Morgantown, West Virginia.

17. Plaintiff did not perform that transaction, Plaintiff did not authorize anyone else to perform that transaction, and Plaintiff did not benefit from that transaction.

18. Upon discovering the unauthorized charge, Plaintiff immediately advised Chase that his account had been compromised and that neither he nor anyone on his behalf had performed the unauthorized transaction.

19. Plaintiff also filed a police report in West Virginia stating the same.

20. On or about March 5, 2021, Chase responded to Plaintiff's dispute and refused to remove the charge from Plaintiff's account. Chase stated that it found Plaintiff responsible for the

unauthorized charge because Plaintiff apparently received a benefit from the unauthorized transaction. Chase, however, did not explain how it reached that conclusion.

21. Chase then continued to send Plaintiff monthly statements, which held Plaintiff liable for the unauthorized Wal-Mart charge as well as interest and late fees stemming from the unauthorized charge.

22. On July 23, 2021, Plaintiff mailed Chase a written dispute letter, affixing to it a letter showing that Plaintiff had been at work on the day the unauthorized charge was made to Plaintiff's Chase credit card. Plaintiff informed Chase that he did not perform the Wal-Mart transaction and that he should not accrue interest and fees as a result of the unauthorized charge. Plaintiff further requested evidence from Chase that showed how Chase arrived at its decision to continue billing Plaintiff for the unauthorized Wal-Mart transaction.

23. On or about August 15, 2021, Chase advised Plaintiff that it was still investigating the matter. Chase's letter directed Plaintiff to not pay the unauthorized charge while its investigation was ongoing.

24. On or about October 29, 2021, and again on November 1, 2021, Chase refused to remove the unauthorized charge—as well as any fees stemming from the unauthorized charge—from Plaintiff's account. Chase's responses omitted any explanation or supplemental documentation showing how it found Plaintiff responsible for the charge.

25. Chase then continued to bill Plaintiff for the unauthorized charge as well as fees and interest stemming from the unauthorized charge.

26. On November 12, 2021, Plaintiff mailed Chase another written dispute letter, which again advised Chase that Plaintiff did not perform the unauthorized Wal-Mart transaction.

Plaintiff again requested evidence from Chase that showed how Chase arrived at its decision to continue billing Plaintiff for the unauthorized Wal-Mart charge.

27. On or about November 23, 2021, Chase advised Plaintiff that it was still investigating the matter. Chase's letter directed Plaintiff to not pay the unauthorized charge while its investigation was ongoing.

28. On December 2, 2021, Chase again refused to remove the unauthorized charge—as well as any fees stemming from the unauthorized charge—from Plaintiff's account. Chase's response, like its earlier responses, omitted any explanation or supplemental documentation showing how it found Plaintiff responsible for the charge.

29. Chase then continued to bill Plaintiff for the unauthorized charge as well as fees and interest stemming from the unauthorized charge.

30. Equifax, Experian, and Trans Union reported the Chase credit card, including the unauthorized charge and fees and interest stemming from the unauthorized charge, on Plaintiff's consumer reports. Equifax, Experian, and Trans Union further reported that Plaintiff's account was delinquent and that he had been late on multiple payments.

31. In July 2021, Plaintiff disputed the Chase credit card balance as well as late payments that were reporting with Equifax, Experian, and Trans Union.

32. In the same letter, Plaintiff disputed the inaccurate reporting of the balance of his Wells Fargo credit card account beginning with -4465.

33. Plaintiff's Wells Fargo credit card was reporting as having a high balance of $879 during a time period in which Plaintiff did not use his Wells Fargo credit card at all.

34. Upon information and belief, Equifax, Experian, and Trans Union forwarded Plaintiff's disputes to Chase and Wells Fargo, respectively.

35. Upon information and belief, Defendants understood the nature of Plaintiff's disputes and the information that he was disputing.

36. Defendants failed to properly investigate Plaintiff's dispute and remove the erroneous information from Plaintiff's credit reports.

37. Instead, they each verified the details of Plaintiff's Chase and Wells Fargo accounts, and the inaccurate information remained on Plaintiff's credit reports.

38. Plaintiff sent follow-up disputes to Equifax, Experian, and Trans Union in September 2021 and then again in November 2021.

39. Both times, Plaintiff explained the inaccuracies and asked that the derogatory information be removed from his reports.

40. Both times, Defendants failed to conduct an adequate investigation and verified the inaccurate information.

41. As a result of the Defendants' conduct, Plaintiff suffered actual damages, including unfavorable credit terms, a decreased credit score, damage to reputation, and emotional distress.

### *Defendants' Willful Violation of the FCRA*

42. As a standard practice, Equifax, Experian, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibility[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that

credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, No. 07 CV 1846, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

43. Upon information and belief and consistent with their standard policies and procedures, Equifax, Experian, and Trans Union automatically generated their "investigation" results once the furnisher provided their responses to Plaintiff's disputes, verifying that the account was accurately reporting, and no Equifax, Experian, or Trans Union employee took any additional steps after the furnisher provided its responses to Plaintiff's disputes.

44. Instead, Equifax, Experian, and Trans Union blindly accepted the furnisher's version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

45. Equifax, Experian, and Trans Union continue the practice of parroting the response from their furnishers even though they have been repeatedly sued for failing to conduct a reasonable investigation as required by the FCRA.

46. Equifax, Experian, and Trans Union do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

47. Instead, Equifax, Experian, and Trans Union intentionally choose not to comply with the FCRA to lower their costs and increase profits. Accordingly, Equifax, Experian, and Trans Union's violations of the FCRA were willful.

48. In addition, at all times pertinent to this Complaint, Chase's and Wells Fargo's respective processing of consumer disputes were willful and carried out in reckless disregard for a consumer's rights as set forth under the FCRA. By example only and without limitation, their conduct was willful because it was intentionally accomplished through intended procedures and

because their efficiency in processing disputes is believed to be more important than making sure that the disputes are investigated thoroughly and accurately.

## COUNT ONE:
### VIOLATION OF 15 U.S.C. §§ 1643(a)(1)(B) and 1640(a)
### (As to Chase)

49. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

50. On February 10, 2021, a fraudster performed an unauthorized transaction for $624.83 at Wal-Mart using Plaintiff's Chase credit card.

51. Plaintiff immediately advised Chase that he did not perform the transaction and that he did not authorize another to do so. Plaintiff further informed Chase that he did not benefit from the transaction.

52. In the following months, Plaintiff followed up with Chase on numerous occasions, including via written letter on July 23, 2021, and November 12, 2021. Plaintiff provided Chase with evidence that he was working on the day the transaction was made, and Plaintiff alerted Chase to a police report that he filed following the unauthorized charge.

53. In spite of Plaintiff's representations that the charge was unauthorized, and the absence of any evidence to the contrary, Chase continued to bill Plaintiff for the full amount of the unauthorized charge plus interest and fees.

54. As a result of Chase's violation of 15 U.S.C. § 1643(a)(1)(B), Plaintiff suffered concrete and particularized harm, including unfavorable credit terms, loss of credit, embarrassment, humiliation, stress, and other emotional distress.

55. Chase is liable for its violation of § 1643(a)(1)(B) under § 1640(a), which permits recovery of actual damages, statutory damages, costs, and attorneys' fees.

**COUNT TWO:**
**VIOLATION OF 15 U.S.C. § 1681e(b)**
**(As to Equifax, Experian, and Trans Union)**

56. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

57. Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they furnished regarding Plaintiff.

58. As a result of Equifax, Experian, and Trans Union's actions, Plaintiff suffered real and actual harm and injury, including a reduced credit score, credit denials, and emotional distress.

59. Equifax, Experian, and Trans Union's conduct in violating § 1681e(b) was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

**COUNT THREE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681i**
**(As to Equifax, Experian, and Trans Union)**

60. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

61. Equifax, Experian, and Trans Union violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file in violation of § 1681i(a)(1); (2) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); (3) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify

10

the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A); and (4) failing to promptly delete the disputed, inaccurate information from Plaintiff's credit file in violation of §1681i(a)(5)(A).

62. As a result of Equifax, Experian, and Trans Union's conduct, Plaintiff suffered concrete and particularized harm, including without limitation: loss of credit, credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

63. Equifax, Experian, and Trans Union's conduct in violating § 1681i was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

**COUNT FOUR:**
**VIOLATION OF 15 U.S.C. § 1681s-2(b)(1)(A)**
**(As to Chase)**

64. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

65. On one or more occasion within the past two years, by example only and without limitation, Chase violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

66. Plaintiff disputed the inaccurate information about his Chase account with Equifax, Trans Union and Experian.

67. When Plaintiff disputed the account with the credit bureaus, Chase used a dispute system named "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher customers.

68. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

11

69. When a consumer reporting agency receives a consumer dispute, it (usually via an outsourced vendor) translates each dispute into an automated consumer dispute verification ("ACDV") form.

70. Upon information and belief, the ACDV form is the method by which Chase has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

71. Upon information and belief, the credit reporting agencies forwarded Plaintiff's dispute via an ACDV to Chase.

72. Chase understood the nature of Plaintiff's disputes when it received the ACDV forms.

73. Upon information and belief, when Chase received the ACDV form containing Plaintiff's disputes, it followed a standard and systematically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the credit reporting agency.

74. Upon information and belief, when Chase receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not there is information already in its computer system that would demonstrate the disputed information is misleading or inaccurate.

75. As a result of Chase's violation of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered concrete and particularized harm, including loss of credit, credit denial, damage to reputation, embarrassment, humiliation, stress, and other emotional distress.

76. Chase's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rending it liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15 U.S.C.

§ 1681n. In the alternative, Chase was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

## COUNT FIVE:
### VIOLATION OF 15 U.S.C. § 1681s-2(b)(1)(B)
### (As to Chase)

77. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

78. On one or more occasion within the past two years, by example only and without limitation, Chase violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

79. As Plaintiff detailed in the previous Count, Chase has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies.

80. Chase is aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

81. None of the Defendants contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

82. Chase understood Plaintiff's disputes and that Plaintiff claimed the derogatory information was inaccurate.

83. As a result of Chase's violation of 15 U.S.C. § 1681-2(b)(1)(B), Plaintiff suffered concrete and particularized harm, including but not limited to: loss of credit, credit denial, damage to reputation, embarrassment, humiliation, and other emotional distress.

84. Chase's violation of 15 U.S.C. § 1681s-2(b)(1)(B) was willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

85. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Chase in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT SIX:
## VIOLATION OF 15 U.S.C. § 1681s-2(b)(1)(A)
### (As to Wells Fargo)

86. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

87. On one or more occasion within the past two years, by example only and without limitation, Wells Fargo violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

88. Plaintiff disputed the inaccurate information about his Wells Fargo account with Equifax, Trans Union and Experian.

89. When Plaintiff disputed the account with the credit bureaus, Wells Fargo used a dispute system named "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher customers.

90. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

91. When a consumer reporting agency receives a consumer dispute, it (usually via an outsourced vendor) translates each dispute into an automated consumer dispute verification ("ACDV") form.

92. Upon information and belief, the ACDV form is the method by which Wells Fargo has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

93. Upon information and belief, the credit reporting agencies forwarded Plaintiff's dispute via an ACDV to Wells Fargo.

94. Wells Fargo understood the nature of Plaintiff's disputes when it received the ACDV forms.

95. Upon information and belief, when Wells Fargo received the ACDV form containing Plaintiff's disputes, it followed a standard and systematically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the credit reporting agency.

96. Upon information and belief, when Wells Fargo receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not there is information already in its computer system that would demonstrate the disputed information is misleading or inaccurate.

97. As a result of Wells Fargo's violation of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered concrete and particularized harm, including loss of credit, credit denial, damage to reputation, embarrassment, humiliation, stress, and other emotional distress.

98. Wells Fargo's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rending it liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Wells Fargo was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

**COUNT SEVEN:**
**VIOLATION OF 15 U.S.C. § 1681s-2(b)(1)(B)**
**(As to Wells Fargo)**

99. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

100. On one or more occasion within the past two years, by example only and without limitation, Wells Fargo violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

101. As Plaintiff detailed in the previous Count, Wells Fargo has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies.

102. Wells Fargo is aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

103. None of the Defendants contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

104. Wells Fargo understood Plaintiff's disputes and that Plaintiff claimed the derogatory information was inaccurate.

105. As a result of Wells Fargo's violation of 15 U.S.C. § 1681-2(b)(1)(B), Plaintiff suffered concrete and particularized harm, including but not limited to: loss of credit, credit denial, damage to reputation, embarrassment, humiliation, and other emotional distress.

106. Wells Fargo's violation of 15 U.S.C. § 1681s-2(b)(1)(B) was willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

107. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Wells Fargo in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants; his attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED.**

                        Respectfully Submitted,

                        **ANIBAL BONILLA RAMOS**

                        By: */s/ Kristi C. Kelly*
                        Kristi C. Kelly, VSB #72791
                        Andrew J. Guzzo, VSB #82170
                        Casey S. Nash, VSB #84261
                        J. Patrick McNichol, VSB #92699
                        KELLY GUZZO, PLC
                        3925 Chain Bridge Road, Suite 202
                        Fairfax, VA 22030
                        Telephone: (703) 424-7572
                        Facsimile: (703) 591-0167
                        E-mail: kkelly@kellyguzzo.com
                        E-mail: aguzzo@kellyguzzo.com
                        E-mail: casey@kellyguzzo.com
                        E-mail: pat@kellyguzzo.com

                        *Counsel for Plaintiff*